# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN LEE MARLOWE, | Civil No. 09-3327 (JRT/AJB) |
| Plaintiff, | |
| v. | |
| JOAN FABIAN, *individually and in her official capacity as Commissioner of the Minnesota Department of Corrections*, and JEFFREY PETERSON, *individually and in his official capacity as Executive Officer of the Minnesota Department of Corrections Hearings and Release Unit*, | **MEMORANDUM OPINION AND ORDER ON CROSS SUMMARY JUDGMENT MOTIONS** |
| Defendants. | |

Bradford W. Colbert, **LEGAL ASSISTANCE TO MINNESOTA PRISONERS, WILLIAM MITCHELL COLLEGE OF LAW**, 875 Summit Avenue, Room 254, St. Paul, MN 55105, for plaintiff.

Angela Behrens, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, St. Paul, MN 55101, for defendants.

Plaintiff Brian Marlowe brought this action alleging constitutional violations arising out of his release and re-incarceration following a violation of his terms of release. Because the Court finds that Marlowe was released on his Supervised Release Date and his petition for habeas corpus was not granted by any Court, the Court grants defendants' motion for summary judgment, and denies Marlowe's motion for summary judgment.

# BACKGROUND

## I.   PARTIES

Marlowe is serving a sentence for first-degree criminal sexual conduct.  He pled guilty to sexually assaulting his seven-year-old daughter and was convicted in Washington County, Minnesota.  He entered the custody of the DOC in July 2002. Marlowe's sentence expires in December 2012.  (Aff. of Krista Guinn Fink, Dec. 1, 2010, Ex. 2, Docket No. 27.)  Defendant Jeffrey Peterson is the Executive Director of the DOC's Hearings and Release Unit.  Defendant Joan Fabian[1] was the Commissioner of the DOC at the time of the alleged violations and filing of this lawsuit.

## II.   DOC SUPERVISED RELEASE PROGRAM

In Minnesota, an executed prison sentence generally comprises a term of imprisonment followed by supervised release (parole) in the community.  Minn. Stat. § 244.05, subd. 1b (2008).  The term of imprisonment is equal to two-thirds of the offender's sentence, unless he receives extended incarceration for prison disciplinary violations.  Minn. Stat. § 244.101, subd. 1 (2008).  The date on which an offender completes his term of imprisonment is referred to as the Supervised Release Date ("SRD").  On the SRD, a prisoner is released from prison on either supervised release or intensive supervised release ("ISR").  (Aff. of Jeffrey Peterson ¶ 2, Dec. 1, 2010, Docket

---

[1] At oral argument, counsel for the Attorney General's Office noted that Joan Fabian has been replaced as Commissioner by Tom Roy.  Notwithstanding this change, Fabian's name is used throughout this Order as the case remains captioned under her name, and some of the claims were brought against Fabian in her individual capacity.  To the extent Marlowe's claims are against Fabian in her official capacity, this judgment applies to Roy in his official capacity as the present Commissioner of the Minnesota Department of Corrections.

No. 29.)  The DOC may place offenders on ISR when it would promote public safety or the offender has been convicted of first-degree criminal sexual assault.  Minn. Stat. § 244.05, subd. 6(a) (2008).  The DOC has discretion to impose release conditions.  *Id.* ISR agents supervise ISR offenders, have frequent face-to-face contacts at offenders' homes and workplaces, remain in telephone contact with them, conduct drug and alcohol testing, implement release conditions, and transport newly released offenders from prison to their new residences.  (Aff. of Jill Carlson ¶¶ 9-10, Dec. 2, 2010, Docket No. 26.)

Marlowe's SRD was December 6, 2007.  (Aff. of Guinn Fink ¶ 3.)  Before his SRD, the DOC's end-of-confinement review committee designated Marlowe a risk level-II predatory offender.  (*Id.* ¶ 4.)  A level-II offender has a moderate risk of re-offense. Minn. Stat. § 244.052, subd. 3(e).  The DOC places all level-II offenders on ISR.   (Aff. of Mariann Ruben ¶ 5, Nov. 30, 2010, Ex. 1, Docket No. 30.)

## III.    RELEASE PLANNING AND HOUSING

Regardless of whether a parolee is on supervised release or ISR, he must reside in approved housing.  (Peterson Aff. ¶ 9.)  An offender is ultimately responsible for finding his own housing.  (Carlson Aff. ¶ 7.)  Generally, an offender may live anywhere in the state if he has an approved permanent residence; however, "transitional housing," such as a motel or halfway house, is not considered a permanent residence.  (*Id.* ¶ 6.)  The DOC's case-management policy lists hierarchical criteria to determine where an offender should live, and if an offender cannot locate a residence and is homeless, the default location is generally the county that committed the offender to the DOC's custody.  (DOC Policy

203.010, Ruben Aff. Ex. 1.)   The county of commitment is considered the responsible county and is the place where the offender will most likely be able to receive social services or other forms of public assistance.  (Carlson Aff. ¶ 8.)  To secure appropriate housing, generally a case manager, supervising agent, and the offender himself work both independently and collaboratively to develop a release plan.  (Ruben Aff. ¶ 7.)  The release plan includes the offender's conditions of release, the location where he will live, and information regarding who will supervise the offender.  (Ruben Aff. ¶ 8.)  When a case manager or offender finds an address that appears to be a viable option, the case manager submits a form to the jurisdiction that supervises offenders in the county of the proposed residence.  (*Id.*)  The agent then investigates the address, and considers whether special conditions should be part of the offender's conditions of release, and approves or rejects the proposed residence.  (*Id.*)

After the case manager, supervising agent, and offender formulate the release plan, a program review team ("PRT") at the offender's correctional facility reviews the plan. The plan then goes to the DOC's Hearings and Release Unit ("HRU") where a staff member reviews the plan to determine whether DOC criteria were appropriately applied for placement on ISR and whether the plan includes appropriate conditions.  (Dep. of Jeffrey Peterson 8:7-10:2, Sept. 1, 2010, Aff. of Angela Behrens, Dec. 3, 2010, Ex. 2, Docket No. 25.)  The HRU is part of the DOC's Policy and Legal Services Division, and its functions also include conducting administrative hearings for the DOC, reviewing offender release plans, and issuing warrants for the DOC.  (Peterson Dep. 6:6-24.)

In addition to having a place to live, an offender must be supervised, and Minnesota has several delivery systems for supervising offenders in the community. (Aff. of Christine Bray ¶ 13, Dec. 3, 2010, Docket No. 24.)  The Community Corrections Act ("CCA") permits counties to provide correctional supervision to offenders on ISR. *See generally* Minn. Stat. § 401.  When an ISR offender resides in a CCA county, the county supervises the offender.  Supervision can become an issue when an offender seeks to live in transitional housing in a CCA county, but has no permanent residence in that county.  (Carlson Aff. ¶ 6.)  According to various affidavits, Ramsey and Hennepin Counties have been particularly reluctant to supervise ISR offenders with no permanent residences or connections to Ramsey or Hennepin, because accepting all of the state's homeless ISR offenders provides no incentive for other counties to develop comparable transitional housing.  (Aff. of Sarah Tardy ¶ 9, Dec. 2, 2010, Docket No. 31.)  If an offender has a viable release plan with a permanent residence in a CCA county, and the county refuses supervision, the DOC has a dispute resolution process for determining the supervising jurisdiction.  (Aff. of Harley Nelson ¶ 6, Docket No. 28.)  Both jurisdictions involved in the dispute "work their way up the chain of command" and if the heads of those jurisdictions cannot agree, the Deputy Commissioner of the DOC may resolve the dispute. (*Id.*)

## IV.    MARLOWE'S RELEASE

Prior to being released, Marlowe was unable to locate an appropriate permanent residence.  The residences that Marlowe, his case manager, and his supervising agent

investigated were all determined to be inadequate for a variety of reasons.  Although RS Eden, a halfway house in St. Paul, indicated it could provide transitional housing for Marlowe, Ramsey County would not accept supervision of Marlowe because he had no recent residential history or permanent residence in the county.  (Ruben Aff. ¶ 12.)  As Marlowe's SRD approached, Marlowe suggested residing at "Sober Living," a transitional residence in Stillwater, but the program rejected him.  (*Id.* ¶ 15.)  Because Marlowe could not find an approved residence prior to his SRD, Mariann Ruben, Marlowe's case manager from December 28, 2006 through his release on December 6, 2007, drafted a release plan listing him as "homeless."

On December 6, 2007, Marlowe's supervising agent, Jason Terwey, picked Marlowe up from the Rush City Correctional Facility.  (Aff. of Jason Terwey ¶ 8, Dec. 3, 2010, Docket No. 32.)  Per Marlowe's request, Terwey took him to a bank to cash the check he received for "gate money" and other money he had in his offender account. (*Id.*)  Terwey then gave Marlowe Washington County phone books, and allowed Marlowe to use his work cell phone to try and find a place to stay.  (*Id.*)  Terwey then took Marlowe to a restaurant, Burger King, as Marlowe requested.  Though Marlowe made several calls he could not find an appropriate residence.  Terwey took him to the Washington County jail for lack of housing.  (*Id.*)  Terwey informed Marlowe that if he could not find housing within a few weeks, his release would likely be revoked for violating the condition of his release to find a stable residence.  (*Id.*; *see also id.* Ex. 2.)

While Marlowe was in jail, Terwey states that he continued looking for housing on his behalf, but his efforts were unsuccessful.  (*Id.* ¶ 9.)  On December 13, 2007, Terwey

met with Marlowe, and because Marlowe had not found housing Terwey served him with a notice of a revocation hearing, notice of the alleged violations, and a violation report. Terwey states that to his knowledge, after receiving this information, Marlowe did not contact any landlords, family, hotels or motels.

On December 18, 2007, a hearing officer from the HRU conducted a revocation hearing.  (*Id.* ¶ 10.)  Because Marlowe was not residing in approved housing, the hearing officer revoked Marlowe's release.  (Peterson Aff. Ex. 2.)  Marlowe's administrative appeal of the revocation was unsuccessful, and he was re-incarcerated at the Minnesota Correctional Facility in Lino Lakes.  (*Id.*)

Despite revoking his release, the DOC continued to help Marlowe find housing, and allegedly would have released him at any time he located approved housing.  (Tardy Aff. ¶ 6-7.)

## V.   STATE HABEAS PROCEEDINGS AND POST-HABEAS RELEASE

In February 2008, Marlowe petitioned a Minnesota state district court for a writ of habeas corpus, alleging he was never released on his SRD and that transporting him to the county jail and later revoking his release violated his right to due process.  (Fink Aff. Ex. 3.)  The district court denied the petition.  (*Id.* Ex. 4.)  In September 2008, the Minnesota Court of Appeals reversed and remanded the district court, directing the DOC to "consider restructuring Marlowe's release plan and . . . seek to develop a plan that can achieve Marlowe's release from prison and placement in a suitable and approved

residence . . . ." *State ex rel. Marlowe v. Fabian*, 755 N.W.2d 792, 797 (Minn. Ct. App. 2008).

On September 23, 2008, RS Eden, which had previously stated it could provide transitional housing, but was not "approved housing" because Ramsey County refused to supervise Marlowe, placed Marlowe on its waiting list and told him that a bed would likely not be available until December 16. (Tardy Aff. ¶ 14.) On October 24, Marlowe's attorney notified the court that the DOC's proposed release plan – that Marlowe would be released if a bed became open sooner than December 16 – complied with the remand instructions, and that further district court proceedings would be unnecessary if the DOC released Marlowe by December 16. (Fink Aff. ¶ 6.) On December 16, 2008, Marlowe was released to RS Eden. (Tardy Aff. ¶ 15.) However, Marlowe was re-imprisoned from June 18, 2010 to November 1, 2010 for multiple violations of his conditions of release, including failing to complete sex offender programming, failure to follow his supervising agent's instructions not to contact a specific person, and using the internet without authorization. (Peterson Aff. ¶ 7, Ex. 4.) Marlowe commenced this litigation in November 2009, alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, violations of his rights under the Minnesota Constitution, and a state law claim for false imprisonment. (Compl. ¶¶ 18-42, Docket No. 1.) Defendants brought a motion for summary judgment on December 3, 2010, (Docket No. 20), and Marlowe filed a cross-motion for summary judgment on December 6, 2010 (Docket No. 34).

**ANALYSIS**

## I.    STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    ELEVENTH AMENDMENT BAR

The parties agree that Marlowe's claims for damages against Fabian and Peterson in their official capacities are barred by the Eleventh Amendment.  Thus, the Court grants defendants' motion for summary judgment on Marlowe's claims as far as they seek damages from defendants in their official capacities.

## III.    *HECK* DOCTRINE

Defendants argue that Marlowe's claims against them in both their official **and** individual capacities are barred because he seeks damages for allegedly unlawful incarceration, but did not first establish in a habeas action that the DOC unlawfully incarcerated him.  In *Heck v. Humphrey*, the Supreme Court held that

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. 477, 486-87 (1994) (citations and footnotes omitted).  The Eighth Circuit has applied *Heck* even where habeas is no longer available because a prisoner is no longer incarcerated.  *See Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) ("The opinion in *Heck* rejected the proposition urged by [plaintiff] . . . 'the principle barring collateral attacks . . . is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.'").

Because Marlowe is challenging his incarceration it is incumbent on him to show that his conviction or sentence was expunged, reversed, declared invalid or called into question by a court's issuance of a writ of habeas corpus.  *See Heck*, 512 U.S. at 486-87. He has not done so.  *See State ex rel. Marlowe*, 755 N.W.2d at 796-97.  Though the Court of Appeals reversed and remanded the district court's disposition of Marlowe's habeas petition, the court did not declare it invalid: it instead ordered that the district court and DOC work together to find a way to get Marlowe out of jail and into transitional housing. *Id.* at 797.  This was accomplished, as evidenced by Marlowe's release to RS Eden and the letter from Marlowe's attorney stating that the DOC's plan to release Marlowe complied with the Court of Appeals' remand.  Thus, *Heck* applies to Marlowe's action and bars his claims for damages under the federal constitution.

Although the Court must find that Marlowe's claims for damages are barred by *Heck*, the Court does find it necessary to highlight an aspect of the Supervised Release process that raises fairness concerns.  As noted above, RS Eden had space available for Marlowe on his SRD, but he was not released to RS Eden because Ramsey County declined to supervise him there.  Later, after re-incarceration, a habeas petition, and an appeal to the Minnesota Court of Appeals, Marlowe was  released to RS Eden under the supervision of Ramsey County.   Although the Court explicitly finds that no violation of rights occurred here, becauseMarlowe was released and then violated his conditions of release, it is possible that under similar circumstances such re-incarceration for failure to find approved housing would constitute a violation of rights.  For instance, in this case, if Ramsey County had not apparently relented and allowed Marlowe to be released to RS Eden, it is not clear where he could have lived, nor how much longer he would have remained imprisoned.  It appears that the motivating factor in Marlowe's release was the Court of Appeals' order, which, while not granting habeas corpus, did require the parties to find a way to effect his release.  The Court recognizes the counties' interests in a fair distribution of ISR supervision responsibilities; however, these must be balanced against the rights of prisoners who have spent the appropriate amount of time in prison and are eligible for release.  Although the Court expressly does not impose, in this case, a  duty by the state or other entities to find housing for prisoners eligible for ISR, the Court does encourage a more fair process to be developed in cases similar to the situation presented here.

For the reasons stated, the Court grants defendants' motion for summary judgment, and denies Marlowe's motion for summary judgment.

## IV.   DECLARATORY RELIEF

Marlowe seeks a declaratory judgment that Fabian violated his constitutional rights by failing to release him from DOC custody and re-imprisoning him.  Since he is no longer subject to the relevant conditions, defendants argue that this claim is moot. However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  "The test for mootness . . . is a stringent one.  Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'"  *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968).  However, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.*

Absent a new criminal offense or a violation of his probation, Marlowe will not have another SRD that could potentially be violated by the conduct of either defendant. In the context of a parolee, a plaintiff cannot assert jurisdiction based on voluntary cessation when resumption of the challenged practice can only occur if plaintiff violates his parole.  *Hickman v. State of Mo.*, 144 F.3d 1141, 1143 (8th Cir. 1998) (finding that parolee who was released and no longer confined to a correctional facility could not

maintain claims). The Court does not presume that Marlowe will commit crimes again, thus creating the possibility of a new SRD that could be violated. *See Weinsten v. Bradford*, 423 U.S. 147, 149 (1975) (holding that there was no demonstrated probability that former parolee would again be among North Carolina parolees). Further, Marlowe's premise, that defendants "voluntarily ceased unlawful conduct" is flawed. After the 2007 revocation of Marlowe's release, he would have been released any time he found approved housing, and indeed was released shortly after obtaining such housing. Thus, the Court finds Marlowe's claim for declaratory relief moot as there is no risk of his being re-incarcerated unless he violates the terms of his release or commits another crime, which the Court cannot assume will occur.

## V.      MINNESOTA CONSTITUTION AS PRIVATE RIGHT OF ACTION

Defendants argue that although Marlowe alleges they violated the Minnesota Constitution, the Minnesota Constitution does not provide a private cause of action for damages in these circumstances. *See Guite v. Wright*, 976 F. Supp. 866, 871 (D. Minn. 1997). Marlowe has presented no argument or caselaw to the contrary. Because the Minnesota Constitution does not provide a private cause of action in these circumstances, Marlowe's claims for relief under the Minnesota Constitution are dismissed.

## VI.     STATE LAW CLAIMS

Marlowe brings a claim under state law for false imprisonment. Because the Court grants summary judgment to defendants on Marlowe's federal constitutional claims, the Court declines to exercise supplemental jurisdiction over his state law claim.

*See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

**ORDER**

Based upon all the files, records and proceedings herein **IT IS HEREBY ORDERED** that:

1.     Defendants' Motion for Summary Judgment [Docket No. 20] is **GRANTED**.

2.     Plaintiff's Motion for Summary Judgment [Docket No. 34] is **DENIED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: July 13, 2011                          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                     United States District Judge